UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 15-cr-165 (JRT/LIB) (36) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Doeron Earl Rayford, | |
| Defendant. | |

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon Defendant Doeron Earl Rayford's ("Defendant") Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 403]. The Court held a motions hearing on October 20, 2015, regarding the parties' pretrial motions.[1] The parties requested an opportunity to submit supplemental briefing which was completed and the motion to suppress then taken under advisement on November 15, 2015.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 403], be **DENIED**.

**I.   BACKGROUND**

Defendant is charged with one count of conspiracy to distribute heroin, methamphetamine, oxycodone, hydromorphone, hydrocodone, and methadone in violation of 21 U.S.C. § 841(a)(1). (Indictment [Docket No. 1]).

The record presently before the Court indicates that, beginning in early March 2015, law enforcement obtained multiple Title III wire and electronic communication intercept warrants for

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate order. [Docket No. 987].

various telephone numbers belonging to Omar Beasley ("Beasley"), a co-defendant in the present case. (Gov't Ex. 9, at 8). Several of the intercepted telephone calls were between Beasley and the present Defendant. (Id. at 17).

In March 2015, law enforcement agents intercepted telephone calls the contents of which, through the affiant's training and experience, indicated that Defendant was obtaining quantities of heroin and selling it to Beasley and others. (Id.). Based upon the information in the those calls, on March 6, 2015, agents obtained a search warrant for cellular site location data for Defendant's telephone for a period of thirty days. (Id. at 18). On April 14, 2015, and April 15, 2015, agents interviewed confidential informant "CS2" who told agents that Defendant had obtained heroin from unknown sources in Chicago, Illinois, and he transported the heroin to Minneapolis, Minnesota for distribution. (Id. at 19–20). CS2 also told law enforcement where Defendant resided when Defendant was in Minnesota. (Id. at 20).

On May 22, 2015, Special Agent Travis Ocken applied for a warrant to search the real property and premises known as 516 Hazel Street North, St. Paul, Minnesota, and all associated garages and storage areas ("Rayford Residence").[2] (Id. at 1). The Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota, determined that probable cause supported the issuance of the search warrant. (Id. at 23). Special Agent Ocken and other law enforcement officers executed the warrant to search the Rayford residence on May 27, 2015. (Id. at 24).

---

[2] This residence is the home of Defendant's girlfriend where Defendant is reported to have stayed when he was in Minnesota. To remain consistent with the documents in the record, this Report and Recommendation will continue to refer to it as the Rayford Residence.

**II.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED BY SEARCH AND SEIZURE [Docket No. 403]**

Defendant moves the Court to suppress all evidence gathered as a result of the execution of the May 22, 2015, warrant to search the Rayford residence at 516 Hazel Street North, St. Paul, Minnesota. In his memorandum, Defendant challenges the probable cause supporting the search warrant arguing that the affidavit relied substantially on CS2 who, Defendant argues, is an unreliable confidential informant, and that the information contained in Special Agent Ocken's affidavit in support of the search warrant failed to establish a nexus between Defendant and the residence at 516 Hazel Street North. (Def.'s Mem. of Law in Support of Def. Doeron Earl Rayford's Mot. to Suppress Search and Seizure, ("Def.'s Mem. in Support") [Docket No. 955], at 1, 5). The Government asserts that probable cause existed to support the search warrant, and that in any event, the officers relied on the warrant in "good faith."

   **A.  Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether

probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts[.]'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

    B. Analysis

        1. Reliability of CS2

The affidavit supporting the May 22, 2015, search warrant contains statements attributed to CS2 that Defendant had obtained heroin from sources in Chicago, Illinois, and he transported it to the Minneapolis, Minnesota, area for distribution. (Gov't Ex. 9, at 19–20). CS2 further informed law enforcement that Defendant had provided co-defendant Beasley with 700 grams of

heroin during the past year, including 200 grams as recently as April 13, 2015. (Id. at 20). CS2 also told law enforcement that based on recent conversations with Defendant, he thought Defendant was going to be bringing one kilogram of cocaine and 300 grams of heroin from Chicago, Illinois, to the Minneapolis area on April 15, 2015. (Id. at 20). CS2 further stated that Defendant typically drove a silver Dodge Journey, which CS2 believed had a aftermarket concealed compartment, to transport drugs from Chicago, Illinois, to Minnesota. (Id.). Lastly, CS2 told law enforcement that while in Minnesota, Defendant stays with his girlfriend who lives in St. Paul at 516 Hazel Street North. (Id.).

"The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (internal citations omitted). In addition, "[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." United States v. Williams, 10 F.3d 590, 593–94 (8th Cir. 1993) (citations omitted).

Special Agent Ocken's affidavit in support of the May 22, 2015, search warrant explicitly states that CS2 had provided information that had been independently verified through the then ongoing investigation. (Gov't Ex. 9, at 7–8). Some of the information which was independently verified includes names, addresses, and telephone numbers. (Id.). Law enforcement also observed Defendant travelling west across Wisconsin in a car matching the description CS2 asserted Defendant would be driving, i.e. a silver Dodge Journey; and at the time CS2 said Defendant would be travelling from Detroit, Michigan to the Minneapolis, Minnesota area. (See Id. at 20). The affidavit further states that CS2 had been identified as a leader within the Beasley

Drug Trafficking Organization with intimate knowledge of the organization and its members. (Gov't Ex. 9, at 8). Under the totality of the circumstances, given the extent of the independent verification, this information adequately established CS2's reliability in the present case. Wright, 145 F.3d at 975; Williams, 10 F.3d at 593–94.

Defendant contends that CS2 cannot be considered reliable because he was the ring leader who led, organized, and managed the drug trafficking organization. (Def.'s Mem. in Support, [Docket No. 955], at 1).[3] The Court disagrees.

Defendant's argument revolves around the idea that CS2 was presumably attempting to "curry favor" with law enforcement, and that at least one segment of information CS2 gave to law enforcement was found not to be accurate. (Id. at 4). Specifically, Defendant points to CS2's assertion that Defendant, on April 15, 2015, would be travelling from Detroit to Minnesota with one kilogram of cocaine and 300 grams of heroin. (Id.). Based on this information, agents established surveillance along Interstate 94 and located Defendant travelling west in Wisconsin near the Minnesota border. (Gov't Ex. 9, at 20–21). Defendant's vehicle was stopped inside the Minnesota border pursuant to a traffic stop, and a K-9 unit drug dog then present alerted on the vehicle indicating the possible presence of drugs. (See Id. at 20–21). The vehicle was impounded, and a search warrant for the vehicle was obtained; however, after a search of the vehicle was then performed, no drugs were found. (Id. at 21). Defendant argues that this singular piece of CS2 misinformation calls into question CS2's veracity and basis of knowledge to such an extent that it makes CS2 entirely unreliable for the purposes of a probable cause

---

[3] The affidavit submitted in support of the search warrant describes CS2 as a leader in the Beasley Drug Trafficking Organization, but nowhere in the affidavit is CS2 identified as Omar Beasley. However, in the supplemental briefing on the motion now before the Court, CS2 was identified as Omar Beasley, who is indeed one the principals of the alleged conspiracy resulting in Defendant's indictment.

determination by Unites States Magistrate Judge Keyes. (Def. Mem. in Support, [Docket No. 955], at 4–5).

However, Defendant's conclusion focuses only on a single part of and disregards all other information CS2 provided that was found to be reliable. Agents had previously verified some information provided by CS2 including names, addresses, and phone numbers he provided. (Gov't Ex. 9, at 7–8). Defendant was independently heard in intercepted telephone calls with co-defendant Beasley discussing what agents believed was the obtaining and selling of heroin. (Id. at 17–18). Agents also observed Defendant travelling west across Wisconsin in the car CS2 asserted Defendant would be driving (a Dodge Journey), at the time CS2 asserted Defendant would be travelling from Detroit, Michigan to the Minneapolis, Minnesota area. (See Id. at 20). And based on the K-9 alert when exposed to this vehicle during a traffic stop, there was some corroborative information that drugs may have been present in the vehicle at one time. (See Id. at 20–21). The information provided by CS2 was also corroborated in that 516 Hazel Street North was the residence of Defendant's girlfriend. (See Id. 20).

Reliability of information provided by an informant is assessed under the "totality of the circumstances" made known to the Magistrate Judge issuing the warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." Williams, 10 F.3d at 593–94. The Eighth Circuit has long recognized that even "the corroboration of minor, innocent details can suffice to establish probable cause." United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987); see e.g. United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001). Moreover, where information provided by an informant is at least partially

corroborated, it has been consistently established that attacks upon credibility and reliability are not crucial to the finding of probable cause. United States v. Humphreys, 982 F2d. 254, 259 (8th Cir. 1992); see United States v. Aron, No. Crim. 15-1 MJD/TNL, 2015 WL 2454060, at *4 (D. Minn. May 22, 2015). The law does not require that every statement made by a confidential informant be supported by corroborating evidence. See e.g. Unites States v. Butler, 594 F.3d 955, 962–63 (8th Cir. 2010). This approach supports the totality of the circumstances standard applicable to establishing probable cause in a search warrant application. See in accord United States v. Reeves, 210 F.3d 1041 (9th Cir. 2000) (reasoning that if a confidential informant's criminal history involving dishonesty was left out of the search warrant application, but the search warrant application was still supported by probable cause even if the criminal history had been known, suppression is not appropriate).

In addition to bolstering reliability by corroboration, the Eighth Circuit has also recognized that "[s]tatments against the penal interest of an informant typically carry considerable weight" in establishing reliability. Tyler, 238 F.3d at 1039 (quotation omitted). This recognition is developed from the Supreme Court's reasoning in Harris that, "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." Unites States v. Harris, 403 U.S. 573, 583 (1971). The Supreme Court further asserted that the fact "[t]hat the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted to criminal conduct." Id. at 583–584; see e.g. Tyler, 238 F.3d at 1039. As a leader among the Beasley Drug Trafficking Organization, the confidential informant CS2, by providing information about Defendant's activities that related to the

advancement of the criminal enterprise of which CS2 was a part, was acting against his own penal interest, and thus, permitted an inference of CS2's reliability on the part of the Magistrate Judge who issued the search warrant in this case.

Based on the foregoing, United States Magistrate Judge Jeffrey J. Keyes had a substantial basis under the totality of the circumstances upon which to conclude that CS2 was a reliable informant whose asserted information could assist in establishing probable cause.

### 2. Nexus to the Residence at 516 Hazel Street North

Defendant also contends that the information in Special Agent Ocken's affidavit supporting the application for the May 22, 2015, search warrant contained no facts to establish that drugs would be found at the 516 Hazel Street North residence. (Def.'s Memo. in Support, [Docket No. 955], at 5). Defendant asserts that no suspicious activity was observed at the residence and no controlled buys were made from the residence. Defendant, therefore, concludes that there are no facts connecting the Defendant to criminal activity at the residence. (Id.).

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)).

In his affidavit supporting the application for the search warrant, Special Agent Ocken stated that cell site data for Defendant showed Defendant in the area of 516 Hazel Street North residence when Defendant participated in an intercepted telephone call with co-defendant Beasley. (Gov't Ex. 9, at 19). Specifically, Beasley asked Defendant, "[W]hat you doin' you got some kills?" (Id.). Defendant responded by stating "[Y]ep what left." (Id.). Defendant further stated that ". . . I got like, probably like seventy-five (75) left or something." (Id.). Special Agent Ocken stated that he believed, given his training and experience, Beasley was attempting to

9

purchase a quantity of heroin from Defendant and Defendant indicated he had 75 grams of heroin. (Id.). Later that same day agents observed Defendant on the front steps of 516 Hazel Street North. (Id.).

In addition to the intercepted telephone call, agents were also informed by CS2 that Defendant stayed with his girlfriend, who lives in St. Paul, Minnesota, when Defendant was in the Minnesota. (Id. at 20).  Based on that information, law enforcement conducted a search of law enforcement indices for 516 Hazel Street North, St. Paul, Minnesota, the residence, they believed, was used by Defendant when he was in Minnesota. (Id.). The search indicated that Felicia Woodard had contacted law enforcement a couple weeks prior to the search and reported an incident at the residence. (Id.). Law enforcement then conduct a search of the Minnesota Driver and Vehicle Services database which revealed that Felicia Woodard owned a silver Dodge Journey with Minnesota registration number 153NEV. (Id.). CS2 had previously informed law enforcement that Defendant drove a silver Dodge Journey in his travels from Detroit, Michigan, to the Minneapolis, Minnesota area. (Id. at 20).

The mere fact that neither CS2 nor the investigating officers directly observed contraband or criminal activity at the 516 Hazel Street North residence does not prevent a finding that there was a nexus between Defendant's criminal activities as described by Special Agent Ocken in his affidavits and the residence. A judge deciding whether to issue a search warrant is allowed to make reasonable inferences as to where contraband may be found. United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (citing United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). Indeed, there have been several cases in which the Eighth Circuit has upheld a finding that there was sufficient probable cause to search a defendant's home even though the

only direct evidence of a suspect's narcotics trafficking was discovered elsewhere. See, e.g., Tellez, 217 F.3d 550.

Specifically, the Eighth Circuit has held that probable cause exists to search the home of a drug dealer in cases in which a supporting affidavit describes a defendant's ongoing drug trafficking activity and also contains a statement by the drafting officer indicating that, in the drafting officer's experience, it is reasonable to infer that evidence of ongoing drug trafficking activities may be found in the home of a drug dealer. United States v. Keele, 589 F.3d 940, 943–44 (8th Cir. 2009); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994). Other circuits have come to similar positions. See United States v. Ross, 487 F.3d 1120, 1123 (8th Cir. 2007) (citing United States v. Wiley, 475 F.3d 908, 912–13 (7th Cir. 2007); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (noting that a magistrate may reasonably infer that evidence is likely to be found where drug dealers live); United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) (stating that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there); United States v. Thomas, 989 F.2d 1252, 1254–55 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can support a finding of probable cause for a search of the dealer's home); United States v. Angulo–Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) (stating that a magistrate may reasonably infer that evidence is likely found where drug dealers live); United States v. Hodge, 246 F.3d 301, 306 (3rd Cir.2001) (finding it reasonable to search an experienced and repeat dealer's home)).

Notably, in line with the foregoing cases, Special Agent Ocken's affidavit in support of his application for a search warrant does include a statement indicating that, in his training and

experience, drug dealers often keep records or other evidence of drug transactions in their homes. (Gov't Ex. 9, at 2, 3).[4]

The Court concludes that the statements in Special Agent Ocken's affidavit in support of his application for a search warrant to search the 516 Hazel Street North residence provided United States Magistrate Judge Jeffrey J. Keyes with a substantial basis to conclude there was a reasonable probability that probable cause existed that evidence of a crime could be found at 516 Hazel Street North, St. Paul, Minnesota.

However, assuming arguendo that the Court were to find that probable cause did not in fact exist to believe that evidence of contraband could be found at the 516 Hazel Street North residence, the Court concludes that Defendant's Motion to Suppress Evidence Obtained By Search and Seizure should still be denied under the "good faith" exception set forth in United States v. Leon, 465 U.S. 897 (1984).

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing Leon, 468 U.S. at 922). On the totality of the present record as described throughout this Report and Recommendation, law enforcement does appear to have relied in good-faith on the warrant ultimately issued by United States Magistrate Judge Keyes to search the residence, and therefore, this militates against suppressing any evidence obtained during the search of 516 Hazel Street North. See, Leon, 468 U.S. at 919–921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate

---

[4] This would be consistent in the present case with the cell phone intercepts of co-defendant Beasley's telephone call with Defendant wherein they discussed what agents believe to be drug transactions based on their training and experience while Defendant was in the vicinity of the St. Paul home at issue and observed to actually be on the steps of that same residence later the same day.

and acted within its scope"). See also, United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed.").

The Court's careful review of Special Agent Ocken's affidavit in support of his application for the search warrant indicates that he presented United States Magistrate Judge Keyes with specific facts indicating that Defendant was supplying co-defendant Beasley with heroin and that evidence of the contraband could be expected to be found at the 516 Hazel Street North residence. Accordingly, when executing the search warrant for the 516 Hazel Street North residence, Special Agent Ocken and the other officers involved therein relied in good faith on the search warrant which had been issued by United States Magistrate Judge Keyes.

### III. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 403], be **DENIED**.

Dated: December 2, 2015

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.